# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>      Plaintiff,<br><br>vs.<br><br>DAVID ALLEN PARKER,<br>      Defendant. | Case No. 24-cr-1038-CJW-2<br><br>**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

## I. INTRODUCTION

On June 26, 2025, the Grand Jury returned a Second Superseding Indictment charging Defendant with one count of Conspiracy to Distribute a Controlled Substance in violation of 21 U.S.C. Sections 846 and 851, two counts of Distribution of a Controlled Substance in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(B), and 851 and in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(C), and 851, and one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(B), and 851. (Doc. 64.)

The matter before me is Defendant's motion to suppress. (Doc. 88.) Defendant seeks to suppress evidence found in a warrantless search of his cooler at the time of his arrest. (*Id.*) The Government filed a timely resistance. (Doc. 90.) The Honorable C.J. Williams, Chief United States District Court Judge, referred the motion to me for a Report and Recommendation. I held a hearing on Defendant's motion to suppress on September 8, 2025. (Doc. 97.)

At the hearing, the following Government exhibits were admitted without objection: 1) Report of Incident by Nicholas Soppe and Related Lab Report; and 2) Body Camera of Nicholas Soppe.

1

Defendant's Exhibit MS[1], consisting of eleven images from Inv. Soppe's body camera video, was also admitted without objection. No witnesses were called to testify. For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II.   FINDINGS OF FACT

In the absence of any testimony, I will first turn to Investigator Soppe's report for a statement of the facts. None of the following is contested:

> On September 19, 2024 at 10:42 am Captain Steil and I, Inv. Soppe, observed David Allan Parker [DOB] of [XXX] Sunnyview Dr., Dubuque, IA 52001 walking in front of his residence. We knew Parker to have an active arrest warrant for Parole Violation.
>
> We made contact with Parker and the warrant was confirmed. Search incident to arrest, Parker was found to be in possession of the following items:
>
> 1) Three pink plastic gem baggies containing a crystal like substance that field tested positive for methamphetamine at 1:54pm. They had as received weights of 2.23 grams, 1.48 grams, and 2.21 grams. Two clear plastic "Walgreens Pill Pouch" baggies containing methamphetamine. They had as received weights of 4.43 grams and 4.43 grams. Total weight of all the methamphetamine was 14.78 grams. These items were located in a soft grey glasses case in Parker's right shorts pocket.
> 2) A tan cloth pouch containing a black digital scale with a crystal like residue that field tested positive for methamphetamine at 1:45 pm, 62 unused pink plastic gem baggies, and one unused "Walgreens Pill Pouch" plastic baggie. The tan pouch was located in a cooler Parker was carrying.
> 3) A plastic shopping bag located in the cooler containing the following property: [a variety of driver's licenses, social security cards, credit

---

[1] Named for his "Motion to Suppress." (Hr'g Tr. at 1.) Hearing testimony is from the Court Reporter's rough draft of the transcript of the September 8, 2025 suppression hearing that was provided as a courtesy to the Court. An official transcript of the hearing had not been entered into the docket at the time this Report and Recommendation was filed.

cards, debit cards belonging to one or more individuals whose identities were redacted at a variety of addresses.]

(Doc. 90-2.)

The DCI Criminalistics Laboratory report shows that the five plastic bags from Defendant's pocket contained 11.31 grams of "methamphetamine (actual)." (*Id.* at 2.)

Officer Soppe's body camera footage, including the date and time stamps, is consistent with his report. The video shows Inv. Soppe leave his vehicle to confront Defendant. The encounter appears to have occurred on a driveway that slopes up from a residential street. Defendant is standing with his back to a retaining wall that runs along one side of the driveway. The retaining wall varies in height as it makes stairsteps up the driveway, but it is high enough and wide enough to sit on and (as discussed below) to act as a surface to inspect the contents of the cooler.

Inv. Soppe approached and began speaking with Defendant about a warrant for a probation or parole violation. (Exhibit 2 at 10:41:39.) Captain Steil is shown on the sidewalk between Defendant and the street. (*Id.* at 10:42.) Defendant leaned against the retaining wall while the officers checked the validity of the arrest warrant. (*Id.* at 10:43.) The gray soft-sided cooler sat on the retaining wall within easy reach of Defendant on his left-hand side. (*Id.*)

After the warrant was confirmed, Inv. Soppe asked Defendant "Do you want your . . . ?" while pointing to the cooler. (*Id.* at 10:43:15.) Defendant's response was unintelligible, but he seems to indicate a desire to return some of the property with him to his residence, perhaps "Can you take my stuff?" to his father who standing nearby. (*Id.* at 10:43:17.)[2] Then Inv. Soppe said, "I just have to search you quick before you pass stuff off." (*Id.* at 10:43:18.) Inv. Soppe began to search Defendant's pockets. At

---

[2] That this person is Defendant's father is somewhat confirmed at 10:43:54 when Inv. Soppe asks Defendant, "What all do you all want to go to your old man?" (*See e.g.,* Ex. 2 at 10:48:43.)

3

10:43:22, Inv. Soppe's hand was in Defendant's right front pocket. Defendant's arms were stretched out to either side to facilitate the search. At this point Defendant was standing, he was not in handcuffs and the cooler was within, if not easy reach, then within lunging distance. Capt. Steil approached the cooler and grabbed its handle and moved it a few feet further from the Defendant. (*Id.* at 10:43:28.) While Defendant emptied out his pockets, Capt. Steil unzipped the cooler, opened its lid, and began to search its contents.

Inv. Soppe began his search of the cooler at 10:44:46 while Defendant sat five or six feet away on the retaining wall, uncuffed, and conversing with Inv. Soppe about some of the contents. Inv. Soppe's search appeared to include at least cursory inspection of all the contents, including opening many of the various interior compartments, flaps, and smaller containers within. Inv. Soppe appeared to be placing the items listed as evidence above into a clear plastic bag which he kept. (*Id.* at 10:49:52.) By the end of the encounter, a third person, perhaps Defendant's father, had taken possession of the cooler. (*Id.*) Defendant was escorted to a marked patrol and placed in handcuffs. (*Id.* at 10:50:25.) Inv. Soppe advised Defendant, "I'm probably going to charge you with another PCS with intent with this meth, ok? Just so you know." (*Id.* at 10:50:43.) Defendant was then placed in the back of the patrol car.

### III. DISCUSSION

#### A. *The Parties' Arguments*

Defendant's motion fails to contain the inventory of items to be suppressed required by my standing order. *See* Standing Order for Suppression Hearings Before United States Magistrate Judge Mark A. Roberts, Issued October 22, 2020. https://www.iand.uscourts.gov/sites/iand/files/MAR%20Standing%20Order%20RE%20Suppression%2010-22-2020%20FINAL.pdf (last viewed September 12, 2025). It

4

Case 2:24-cr-01038-CJW-MAR    Document 102    Filed 09/16/25    Page 4 of 10

appears reasonably clear, however, that Defendant seeks suppression of items found in the cooler:

> [The] black digital scale with crystal-like residue that field tested positive for methamphetamine, 62 unused pink plastic gem baggies, and one unused "Walgreens Pill Pouch" plastic baggie. There were also several identification cards seized from a white plastic bag wrapped up inside the cooler.

(Doc. 88 at 2.) Defendant's brief makes a passing reference to "fruit of the poisonous tree" including statements, but these have not been identified sufficiently for Defendant to have made a case for their suppression.

Defendant concedes the outcome of this motion will not determine the case. (Doc. 88.) Presumably Defendant's concession arises from the circumstance that, even if the scale and residue found in the cooler are suppressed, he was nevertheless arrested with more than 11 grams of methamphetamine in five baggies—evidence he does not challenge—on his person.

Defendant does not argue that he was not arrested at the time of the search. In other words, he does not contend that he was merely being detained at the time of the encounter such that a more limited search would be appropriate under *Terry*.[3] Defendant merely argues that the warrantless search of the cooler was unreasonable and no exception to the warrant requirement is applicable. Defendant contends the cooler was removed from his immediate control and thus the search cannot be justified as incident to his arrest. Defendant also argues that the Government did not have probable cause to search the cooler and there were no exigent circumstances to justify the search.

---

[3] Indeed, that argument would be unavailing. Even if he was temporarily detained while the warrant was confirmed, the officers had confirmed existence of an arrest warrant at the time they commenced the search. By the same token, Defendant does not argue that he was not under arrest until he was placed in handcuffs well after the search.

The Government argues the search of the cooler was a permissible search incident to arrest. The Government maintains that:

> the grey cooler bag remained within defendant's immediate reach at the time of his lawful arrest, and defendant was not handcuffed at the time the bag was searched. Since the cooler bag was within "the area into which [defendant] might reach," the Court should find that the officers' search of the bag falls within the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement.

(Doc. 90-1 at 4.)

### B. Relevant Law

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless searches are *per se* unreasonable, with a few well-established exceptions. *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *Weeks v. United States*, 232 U.S. 383, 392 (1914)). "This exception derives from interests of officer safety and evidence preservation that are typically implicated in arrest situations." *Id*. See also *United States v. Richardson*, 40 F.4th 858, 865 (8th Cir. 2022) (providing that the search of an individual incident to arrest is proper); *United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014) ("'Among the exceptions to the warrant requirement is a search incident to a lawful arrest. . . .' Such a search may include a search of the arrestee's person to remove weapons and seize evidence to prevent its concealment or destruction.") (Quoting and citing *Arizona v. Gant*, 556 U.S. 332, 338-39 (2009), in turn citing *Chimel v. California,* 395 U.S. 752, 763 (1969)). The Eighth Circuit has explained:

> Whether an officer has exclusive control of a seized item does not, however, necessarily determine whether the item remains in "the area from within which [the arrestee] might gain possession of a weapon or destructible

evidence." *Chimel*, 395 U.S. at 763, 89 S.Ct. 2034 (emphasis added). Accordingly, we have rejected the notion that an officer's exclusive control of an item necessarily removes the item from the arrestee's area of immediate control. *See United States v. Morales*, 923 F.2d 621, 626–27 (8th Cir.1991) (rejecting the defendant's argument that the search of his bags, performed while the defendant was held spread-eagled against a wall three feet away by another officer, was improper because the police had gained "exclusive control" over the bags, explaining that "under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his 'exclusive control'" (quoting *New York v. Belton*, 453 U.S. 454, 461–62 n. 5, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981))); *United States v. Mefford*, 658 F.2d 588, 591–93 (8th Cir.1981) (upholding the search of the defendant's paper bag as a search incident to arrest because the bag remained in the area within the defendant's immediate control even though the arresting officer held the bag during the search); *see also United States v. Tejada*, 524 F.3d 809, 812 (7th Cir.2008) (noting that the defendant was "unlikely to be able to make a successful lunge for the entertainment center" while he was "[h]andcuffed, lying face down on the floor, and surrounded by the police," but nonetheless holding that the search of the entertainment center incident to arrest was valid because "the police did not know how strong he was, and he seemed desperate"); *United States v. Horne*, 4 F.3d 579, 586–87 (8th Cir.1993) (upholding a search of furniture that occurred after the defendant and the only other person in the room had been handcuffed, because the arresting officer "could reasonably have believed that weapons were within reach of the hand-cuffed detainees").

*United States v. Perdoma*, 621 F.3d 745, 750–51 (8th Cir. 2010). The Eighth Circuit has also stated:

> [I]f an officer has arrested the individual, the officer may search the individual's person incident to that arrest and may reach into his pockets. *United States v. Robinson,* 414 U.S. 218, 226, 236, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). A search incident to arrest is justified by the concern for officer safety and the need to collect evidence of the offense. *Id.* at 234, 94 S.Ct. 467. But, the presence of either justification need not be established in a particular case. That is, officers need not have any reason to think the individual is armed or that evidence of the crime will be found

7

on his person. It is the fact of arrest that enables the officer to conduct a search, not a particularized suspicion as to the suspect's dangerousness. *Id.* at 235–36, 94 S.Ct. 467. Searches incident to arrests are not limitless, but they are unconstrained by the limits enunciated in *Terry* and its progeny regarding frisks.

*United States v. Pratt*, 355 F.3d 1119, 1121–22 (8th Cir. 2004)

## C. Analysis

I recommend the Court conclude the incident-to-arrest exception applies to the search of the cooler. This case is squarely within the reasoning of *Perdoma* cited above. In *Perdoma* the defendant was carrying a small bag when he was confronted by law enforcement at a bus station. As the Eighth Circuit summarized the evidence:

> Perdoma paused after taking the wallet out of his pocket. Instead of handing the wallet to Eberle, Perdoma put it back in his pocket and ran. Investigator Eberle ordered him to stop and grabbed his jacket, but Perdoma continued running. After a brief chase, Eberle and NSP Investigator Scott, who was also on duty at the bus terminal that morning, wrestled Perdoma to the ground and placed him under arrest. The officers handcuffed Perdoma and escorted him to an area at the rear of the terminal. Investigator Eberle searched Perdoma and discovered approximately four grams of marijuana in the coin pocket of Perdoma's pants. Meanwhile, Investigator Scott found approximately 454 grams (one pound) of methamphetamine in Perdoma's bag.

*Perdoma*, 621 F.3d at 748. Thus, in *Perdoma*, the defendant was in handcuffs when his bag was searched and had less capacity to lunge for and possibly grab a weapon or destroy evidence. At the time the cooler was seized it was within arm's reach. Throughout the search, the cooler was, by my estimate from the video, no more than 5 or 6 feet away from Defendant and he was not handcuffed. I conclude this distance is within lunging distance.

8

At the hearing, Defendant's counsel argued:

> And the one thing that I will say is that the reason I filed this motion is because I was struck when I watched the video at how unconcerned the officers were that Mr. Parker posed any threat to them. And that bears on, you know, whether there was a proper search incident to arrest because not only was the object that was the subject of the motion of the -- of the container, it was moved outside of the immediate vicinity of Mr. Parker. But moreover, the officers weren't really concerned about, you know, Mr. Parker lurching away from them, running to the object, and retrieving some -- some sort of weapon.

(Hr'g Tr. at 3.) This argument is consistent with the argument in his brief that officers showed no concern that Defendant posed a danger to them. (Doc. 88-1 at 5.) This argument is unavailing because, as *Pratt* noted:

> [Officers] need not have any reason to think the individual is armed or that evidence of the crime will be found on his person. It is the fact of arrest that enables the officer to conduct a search, not a particularized suspicion as to the suspect's dangerousness. *Id.* at 235–36, 94 S.Ct. 467. Searches incident to arrests are not limitless, but they are unconstrained by the limits enunciated in *Terry* and its progeny regarding frisks.

355 F.3d at 1121–22. In other words, law enforcement need not justify the search based on suspicion Defendant was dangerous.[4] The fact of his arrest permitted the officers to conduct the search.

Therefore, I recommend that the Court deny the motion to suppress.

---

[4] Some issues Defendant did not raise: If a search incident to arrest is not "limitless" under *Pratt*, what are the limits? Did the officers here make a search so thorough it was beyond what was necessary to ascertain the presence of any weapons? Similarly, Defendant was arrested on a warrant for a parole or probation violation. What sort of evidence of this "crime" might he have destroyed if he had lunged for his cooler? These may (or may not) be interesting points, but Defendant did not raise them before me.

9

## IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Suppress. **(Doc. 88.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 16th day of September, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa