# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-CR-1038-CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| DAVID ALLEN PARKER, | |
| Defendant. | |

## I.    INTRODUCTION

This matter is before the Court on a Report and Recommendation ("R&R") by the Honorable Mark A. Roberts, United States Magistrate Judge, recommending the Court deny defendant's Motion to Suppress. (Doc. 102).

On June 26, 2025, the grand jury returned a second superseding indictment charging defendant with one count of conspiracy to distribute a controlled substance in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A); two counts of distribution of a controlled substance in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 851 and Sections 841(a)(1), 841(b)(1)(C), and 851; and one count of possession with intent to distribute a controlled substance in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 851. (Doc. 63). The first three counts allegedly involved pure, also known as "ice," methamphetamine. (Doc. 63, at 2–3).

On August 21, 2025, defendant filed the motion to suppress at issue here. (Doc. 88). On August 29, 2025, the government filed a resistance. (Doc. 90). On September 8, 2025, Judge Roberts held a hearing on the motion. (Doc. 97). At the hearing, Judge Roberts received the government's Exhibits 1 and 2 (Docs. 90-2 & 90-3) and defendant's

Exhibit MS (Doc. 91-1).  Exhibit 1 comprises a narrative from Investigator Nicholas Soppe from the Dubuque Police Department and an Iowa Criminalistics Laboratory report.  Exhibit 2 is a nearly eleven-minute clip from Investigator Soppe's body camera.  Exhibit MS consists of eleven screenshots from Investigator Soppe's body camera footage.  Neither party called any witnesses.  (Doc. 97).

On September 16, 2025, Judge Roberts issued his R&R, which recommends that this Court deny defendant's motion.  (Doc. 102).  On September 30, 2025, defendant filed an objection to the R&R.  (Doc. 106).  For the following reasons, defendant's objection (Doc. 106) is **overruled**, the R&R (Doc. 102) is **adopted**, and defendant's Motion to Suppress (Doc. 88) is **denied**.

## II.    STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[ ] a de novo review of the disputed portions of a magistrate judge's report and recommendations").  "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions.").  It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report and recommendation when such review is required.  *Lothridge*, 324 F.3d

at 600. Accordingly, the Court reviews the disputed portions of Judge Roberts' R&R de novo.

Any portions of a report and recommendation to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (citation modified) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more exacting standard even if no objections are filed. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### III. DISCUSSION

Neither party objects to Judge Roberts' findings of the relevant facts. (Doc. 106, at 2, 4). The Court has also thoroughly reviewed the record and finds it supports Judge Roberts' findings of facts. The Court therefore incorporates Judge Roberts' findings of facts in the R&R as if fully set forth here. (Doc. 102, at 2–4). When relevant, the Court will rely on and discuss the facts in conjunction with its de novo review of the legal issues. Defendant makes only one argument for suppression: that the warrantless search of his cooler does not fall under the search incident to arrest ("SITA") exception to the warrant requirement and therefore the items seized from the cooler following the search must be suppressed.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" is protected under the Fourth Amendment. U.S. Const. amend. IV. Warrantless searches, that is, "searches conducted outside the

3

judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). One such exception is the SITA exception. *See, e.g.*, *Chimel v. California*, 395 U.S. 752, 762–63 (1969) (articulating the history and bounds of the SITA exception to the warrant requirement).

The United States Supreme Court has found that when officers make a lawful arrest, it is reasonable for them "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.* at 763. In addition to searching the arrestee's person, officers may search "the area into which an arrestee might reach in order to grab a weapon or evidentiary items" without a warrant. *Id.* Put more precisely, under the SITA exception, the area that law enforcement officers may search without a warrant consists of the "arrestee's person and the area 'within his immediate control'—[meaning] the area from within which he might gain possession of a weapon or destructible evidence." *Id.*; *see also United States v. Morales*, 923 F.2d 621, 625–27 (8th Cir. 1991) (applying the standard for searches of the area within an arrestee's immediate control from *Chimel*). Officers may search both the arrestee and the area within his immediate control in order to avoid endangering their safety and having "the arrest itself frustrated." *Chimel*, 395 U.S. at 763. In other words, the SITA exception serves the purposes of "protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." *Arizona v. Gant*, 556 U.S. 332, 339 (2009).

In furtherance of the reasons for the SITA exception, officers do not need to wait until their safety is threatened or their search for evidence is frustrated before the search becomes reasonable, as

> [t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, [the SITA exception] requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search[.]

*United States v. Robinson*, 414 U.S. 218, 235 (1973); *accord United States v. Pratt*, 355 F.3d 1119, 1121–22 (8th Cir. 2004) (citing *Robinson* for the same proposition). Officers also need not actually fear for their safety for the SITA exception to apply: "Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the arresting officer] did not indicate any subjective fear of [defendant] or that he did not himself suspect that [defendant] was armed." *Robinson*, 414 U.S. at 236. This is because "[t]he interests justifying search are present whenever an officer makes an arrest. A search enables officers to safeguard evidence, and, most critically, to ensure their safety . . . ." *Virginia v. Moore*, 553 U.S. 164, 177 (2008); *see also United States v. Collier*, No. 24-CR-3067, 2025 WL 1362021, at *2–4 (D. Neb. Apr. 24, 2025), *R&R accepted*, 2025 WL 2426744 (D. Neb. Aug. 22, 2025) (finding that a fanny pack that "was still within lunging distance" of the defendant properly fit within the SITA exception and accepting as credible testimony that an officer "had numerous situations in [his] career where somebody feigns compliance and then actively assaults us").

Evidence properly seized under the SITA exception includes property that officers have taken away from the arrestee, but that is still within lunging distance of the arrestee, and property discovered in a search conducted after the arrestee is detained. *United States v. Perdoma*, 621 F.3d 745, 750–51 (8th Cir. 2010) (finding that the search was proper because it "occurred in close proximity to where [defendant] was restrained" and therefore "within 'the area into which [he] might reach in order to grab a weapon or

evidentiary items'" (quoting *Chimel*, 395 U.S. at 763)); *Morales*, 923 F.2d at 622, 625–27 (upholding the search of a knapsack and duffle bag that were three feet away from the arrestee, who was standing spread-eagled against a wall but not in handcuffs, and the search of the purse of a woman who was not handcuffed or under arrest because the search was of items within the arrestee's area of immediate control and contemporaneous with the arrest).

Here, defendant does not challenge Judge Roberts' factual findings and "agrees that Judge Roberts accurately recounted what" Exhibit 2 shows and that "Judge Roberts accurately identified the contents of the cooler, which included contraband, that [defendant] seeks to suppress." (Doc. 106, at 2). After reviewing all the exhibits, Judge Roberts found that during defendant's interaction with law enforcement on September 19, 2024, defendant had a cooler that was at first "within easy reach of defendant on his left-hand side," then moments later was "within, if not easy reach, then within lunging distance," and by the end of the encounter "no more than 5 or 6 feet away from defendant. . . ." (Doc. 102, at 3, 4, & 8). Judge Roberts also found that during the search of the cooler, defendant "sat five or six feet away on the retaining wall, uncuffed . . ." (*Id.*, at 4). The contraband that law enforcement seized from the cooler included "[a] tan cloth pouch containing a black digital scale with a crystal like residue that field tested positive for methamphetamine . . ., 62 unused pink plastic gem baggies, and one unused 'Walgreens Pill Pouch' plastic baggie." (Doc. 102, at 2); (Exs. 1, at 1; MS at 6, 11). Law enforcement found the same gem baggies and "Walgreens Pill Pouch" baggies in defendant's pocket, and DCI confirmed that they contained methamphetamine. (*Id.*, at 2–3); (Ex. 1 at 1–2). Before the search, defendant had an active arrest warrant which law enforcement confirmed and were in the process of executing. (Doc. 102, at 2) (quoting Ex. 1, at 1). Based on these factual findings, Judge Roberts concluded the

6

Case 2:24-cr-01038-CJW-MAR    Document 109    Filed 10/08/25    Page 6 of 9

cooler was within the area covered by the SITA exception so a warrant was not required to search the cooler.

None of Judge Roberts' factual findings are clearly erroneous. Exhibit 2, Investigator Soppe's body camera footage, depicts Captain Marty Steil and Investigator Soppe from the Dubuque Police Department approach defendant. (Ex. 2 at 0:25). At the start of the encounter defendant is standing next to a retaining wall comprised of flat, rectangular stones, and a soft-sided black cooler with a gray strap is immediately behind him. (*Id.* at 1:25). At this point of the encounter, the cooler is close enough that it appears defendant could have touched it by extending his arm. (*Id.* at 1:25–:43). Moments later, after defendant sits down on the retaining wall, the cooler still appears to be close enough that defendant could have handed it to law enforcement without doing more than reaching his arm out fully. (*Id.* at 1:51). The distance between the cooler and the defendant while defendant is seated is less than defendant's body width. (*Id.* at 2:01; Ex. MS at 1 (a stillshot of Ex. 2 at 2:28)). In fact, when defendant stretches his arms out for Investigator Soppe to pat him down, defendant's arm extends past the cooler. (Ex. 2 at 2:35). At that point, Captain Steil began searching the cooler. (*Id.*; Ex. MS at 2–3 (stillshots of Ex. 2 at 2:38 and 2:40)). Thus, the Court agrees that "[a]t the time the cooler was seized it was within arm's reach." (Doc. 102, at 8). It follows, then, that the Court agrees with Judge Roberts' legal conclusion that the cooler was within the area covered by the SITA exception and no warrant was required.

Defendant's argument that the SITA exception does not cover the search of defendant's cooler under the facts found by Judge Roberts and affirmed by this Court here relies on speculation and does not push the search of defendant's cooler on September 19, 2024, past the bounds of the SITA exception. First, defendant emphasizes that "[a]t no point did either of the two officers involved in [defendant's] arrest express or exhibit any concern that [defendant] might attempt to flee, destroy evidence, or access

7

a weapon from the cooler." (Doc. 106, at 3). Second, defendant adds that "there was no articulable or observed risk that [defendant] would lunge for the cooler or pose any danger to the officers." (*Id.*, at 4). Third, defendant claims that "[t]he conduct of the officers, as depicted in the video (exhibit 2) clearly shows that the officers knew [defendant] and knew that he was not a threat to them, or to run away, or to grab a weapon or evidentiary items." (*Id.*, at 7–8). Defendant then concludes "officers did not perceive [defendant] as a threat and had no reason to believe he would lunge at or access the cooler. [Defendant] was not handcuffed . . . because [the officers] felt no need to do so." (*Id.*, at 8). Last, defendant attempts to establish that, "officers . . . did not seize the cooler to preserve evidence . . . they opened it to see what was inside." (*Id.*, at 6). In short, defendant argues the underlying purposes of the SITA exception do not apply here.

Defendant's claims are based on speculation as neither defendant nor the government called Investigator Soppe or Captain Steil to inquire about their conclusions as to defendant's likelihood to flee, destroy evidence, access a weapon or evidentiary items, lunge for the cooler, pose any danger, or actions during any previous interactions with law enforcement. *See* (Doc. 97); (Doc. 102, at 2 ("No witnesses were called to testify.")). For that reason, the officers' actual conclusions on these issues are not in the record. But such information, even if properly in the record before this Court, would not matter anyway because, as discussed above, the SITA exception does not demand any justification other than a lawful arrest. *Collier*, 2025 WL 1362021, at *2–4. At that point, officers may properly conduct a search to ensure that there is no danger to them or tangible evidence on the defendant or within his immediate control; they do not have to wait until it becomes apparent or until they fear for their safety or the efficacy of the arrest. Moreover, the test here is an objective one. What the officers actually thought or believed is irrelevant. The question is whether the facts show that an offender could

8

Case 2:24-cr-01038-CJW-MAR    Document 109    Filed 10/08/25    Page 8 of 9

access the cooler here, not whether the officers actually believed or feared he would. Thus, defendant's own conclusions that Investigator Soppe and Captain Steil must not have been in fear for their safety or certain that they would find evidence inside the cooler are unavailing following this Court's de novo view of the law.

Because this Court does not find that Judge Roberts committed a mistake in concluding that the cooler was within the immediate control of defendant during the search incident to his lawful arrest, and therefore the search fits within the SITA exception to the warrant requirement, the items that law enforcement seized from inside of the cooler must not be suppressed.

### IV.   CONCLUSION

For these reasons, the Court **adopts** Judge Roberts' R&R.  (Doc. 102). Defendant's Objection (Doc. 106) is **overruled** and defendant's Motion to Suppress (Doc. 88) is **denied**.

**IT IS SO ORDERED** this 8th day of October, 2025.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa